IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:22-CV-00073-KDB-DCK

SEAN P. ENCK,

    Plaintiff,

v.

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA,

    Defendant.

**ORDER**

**THIS MATTER** is before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. No. 26), Defendant's Motion for Summary Judgment (Doc. No. 32) and Defendant's Motion to Strike an exhibit to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 42). The Court has carefully considered these motions and the parties' briefs and exhibits. For the reasons discussed below, the Court will in part **GRANT** and in part **DENY** the Parties' cross motions for summary judgment and will **DENY** Defendant's Motion to Strike.

In this action, Plaintiff, an employee of Verizon, Inc. seeks "underinsured motorists" ("UIM") insurance coverage under Verizon's multistate and multi-coverage motor vehicle insurance policy with Defendant (the "Policy") for injuries that he suffered in a serious traffic accident in North Carolina. Whether or not the Policy provides UIM coverage turns on whether the Policy is subject to North Carolina's Motor Vehicle Financial Responsibility Act of 1953, N.C. Gen. Stat. Ann. § 20-279.1, *et seq*. (the "FRA" or "Act"), which was enacted, in part, to require that motor vehicle insurers provide coverage for "uninsured" and "underinsured" motorists.

1

Specifically, the issue before the Court is whether the Policy is "applicable solely to fleet vehicles," in which event it would not be subject to the FRA. The Court finds that the Policy does not meet this narrow exception. Rather than being "solely" applicable to fleet vehicles, the Policy, through an endorsement providing "Drive Other Car Coverage," is also applicable to vehicles that are not owned, hired or borrowed by Verizon or even used in Verizon's business (and which are thus not "fleet vehicles"). Therefore, the Policy is subject to the FRA and must provide "underinsured motorists" coverage. Accordingly, the Court will grant summary judgment to Plaintiff on his claims seeking such coverage pursuant to the FRA.

However, the Court agrees with Defendant that its denial of coverage and the ongoing coverage dispute between the Parties does not, as a matter of law, constitute bad faith or an unfair trade practice claim under North Carolina law. Simply put, the parties have a *bona fide* disagreement over the coverage afforded by the Policy, which, at least prior to this ruling,[1] was not a settled legal issue. Thus, Defendant's denial of coverage, without additional wrongful conduct that Plaintiff has not shown, does not amount to bad faith or an unfair trade practice. Finally, the Court will deny Defendant's Motion to Strike an amicus brief (from a different case) which Plaintiff attached as an exhibit to one of its memoranda. The Court has considered the already publicly available amicus brief only for the purpose for which it was properly filed (to provide the full context of the relevant Fourth Circuit opinion which cites it). Therefore, there are no grounds for striking the exhibit.

---

[1] As noted below, with this ruling five Federal Judges (two in the District Court and three in the Court of Appeals) have now found that the "broadening" endorsement at issue means that the relevant insurance policy comes within the scope of the FRA. Insurance companies basing future denials of coverage on the same arguments presented (and rejected) here do so at their own peril for claims of bad faith, etc.

# I. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Modern Mosaic, LTD v. Turner Construction Co., et al.*, 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *8.929 Acres of Land,* 36 F.4th at 252. "A fact is material if it might affect the outcome of the suit under the governing law." *Id.*, (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] claim with respect to which [he] has the burden of proof," summary judgment is warranted); *United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022). If the movant satisfies his initial burden to demonstrate "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmovant to "present specific facts showing that there is a genuine issue for trial." *8.929 Acres of Land,* 36 F.4th at 252, quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Hixson v. Moran*, 1 F.4th 297, 302

3

(4th Cir. 2021). Rather, the nonmoving party must establish that a material fact is genuinely disputed by, *inter alia*, "citing to particular parts of the materials of record" and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Fed. R. Civ. P. 56(c)(1)(A); *8.929 Acres of Land,* 36 F.4th at 252, quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

Still, summary judgment is not intended to be a substitute for a trial of the facts. *Anderson*, 477 U.S. at 249. In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)).

In the end, the relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation and citation omitted).

4

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Sean Enck was formerly employed as a Senior Telecom Specialist for Verizon, one of the largest telecommunications companies in the United States. In April 2017, while Enck was driving to a Verizon customer for a service call (within the course and scope of his employment), he was involved in an automobile accident in which Morgan Myers, the driver of the other vehicle, was found to be at-fault (the "Accident"). Indeed, it is alleged that the driver at fault was under the influence of alcohol at the time of the accident. (*See* Doc. No. 1 at pp.1-2). Enck suffered serious and debilitating injuries to his right shoulder and neck as a result of the Accident.[2]

In October 2019, Enck filed a complaint in Iredell County Superior Court seeking damages resulting from the Accident against Ms. Meyers, Mark S. Graham (the owner of the vehicle which Ms. Meyers was driving), and the bar where it was alleged that Ms. Meyers was drinking immediately prior to the accident in a case captioned *Sean Enck v. Blue Parrot at the Grove, LLC; Blue Parrot Grill Inc.; Blue Parrot at Lake Norman, LLC; Peter Gjuraj; Morgan Diane Meyers; and Mark Shannon Graham*, 19 CVS 3060 (the "Underlying Action"). (See Doc. No. 1-3). Ultimately, Enck settled his claims resulting from the Accident for the limits of Ms. Meyers' and Mr. Graham's liability insurance policies as well as his dram shop claims against the other defendants. The Underlying Action has been stayed pending resolution of this action and a determination of whether there is UIM coverage available to Plaintiff under Verizon's

---

[2] Because Mr. Enck was working at the time of the Accident, he was entitled to and received workers compensation benefits from Verizon pursuant to a May 2020 settlement of his workers compensation claim.

5

business auto insurance policy issued by Defendant National Union Fire Insurance Company of Pittsburgh, PA's ("National Union" or "Insurer"), Policy Number CA 774-21-38.

The Policy was issued to Verizon for the policy period of June 30, 2016, through June 30, 2017, and provided coverage to Verizon's fleet of more than 20,000 vehicles located in forty-four states, including North Carolina. (*See* Doc. Nos. 1, 34) In every state where Verizon could reject UIM coverage, it did so. In every state where Verizon was unable to reject UIM coverage outright, it selected the minimum amount of coverage. (*See, e.g.*, Doc. No. 33-1 at p. NUFIC 000220). With regard to coverage in North Carolina, Verizon purported to reject UIM coverage in a document entitled, "North Carolina Notice Uninsured and Underinsured Motorists Coverage." (Doc. No. 33-2 at pp.2-3).[3]

On or about March 19, 2020, counsel for Enck sent a letter to a third-party claims administrator for Verizon requesting UIM coverage under the Policy. (Doc. No. 33-7). National Union initially denied Plaintiff's UIM claim in May 2020. Counsel for Enck and the Insurer thereafter exchanged communications related to the claim, which was again denied in February 2022 and April 2022. (*See* Doc. Nos. 1-5, 1-7, 1-9, 33-9, 33-11). National Union denied Enck's claim on the grounds that Verizon declined to purchase UIM coverage, which North Carolina did not require (based on N.C. Gen. Stat. § 20-279.21(b)(4), which states that: "Notwithstanding the provisions of this subsection, no policy of motor vehicle liability coverage applicable … solely to fleet vehicles shall be required to provide underinsured motorist coverage.") *See* Doc. No. 1-

---

[3] The form notes that if Verizon rejects Uninsured and Underinsured coverage then it "must complete the Certificate of Exemption and comply with the notice requirements therein." While National Union has called the Court's attention to "an acknowledgement form" (Doc. No. 33-2 at p. 4), it is unclear if the required "Certificate of Exemption" was completed.

6

5. In response, Enck's counsel argued that because the Policy contained a "Drive Other Car" endorsement,[4] (the "Endorsement") the cited "fleet" exception in the FRA did not apply to the Policy. In further support of Enck's position, his counsel cited *Vincent v. AMCO Ins. Co.*, 821 Fed. Appx. 220 (4th Cir. 2020) (unpublished). Enck's counsel concluded that Enck was entitled to UIM coverage of $1 million, the maximum amount allowable under the FRA. (*See* Doc. No. 33-11). National Union in turn argued that *Vincent* was not binding because it was unpublished and in any event was wrongly decided. (*See* Doc. No. 33-12). Therefore, the Insurer maintained its denial of Enck's claim.

On June 2, 2022, Enck filed this action requesting that the Court find that he is entitled to UIM coverage under the Policy. He asserted claims for: (1) declaratory judgment; (2) breach of contract; (3) unfair claims practices; and (4) breach of the covenant of good faith. (*See* Doc. No. 1). Following discovery, the parties filed cross-motions for summary judgment, each asking the Court to rule as a matter of law on whether the Policy is governed by the FRA (and therefore required the purchase of UIM coverage). Enck seeks partial summary judgment as to liability on its claims and National Union seeks summary judgment on all of Enck's claims. Also, National Union has filed a Motion to Strike an *amicus* brief filed in *Vincent*, which Enck attached as an

---

[4] The Policy's "Drive Other Car" endorsement broadens coverage for "ALL EXECUTIVES OF THE NAMED INSURED WHO ARE FURNISHED AUTOS BY THE NAMED INSURED AND WHO DO NOT HAVE PERSONAL AUTO INSURANCE." (*See* Doc. No. 33-6). In part, it extends the liability coverage of the Policy to any "auto" that is not owned, hired or borrowed by Verizon (or owned by a covered executive or a family member). The endorsement does not limit the extended coverage to "autos" used in Verizon's business (i.e. it applies to non-owned autos used for personal reasons). The only requirement is that the vehicle may not be owned, etc. as described in the endorsement. *Id*.

exhibit to his Memorandum in Opposition to Defendant's Motion for Summary Judgment. (*See* Doc. No. 42). The motions are fully briefed and ripe for the Court's decision.

## III. DISCUSSION

### A. Construction of Insurance Contracts under North Carolina Law

The parties agree that North Carolina law governs the interpretation of the Policy and the Court concurs. Plaintiff's UIM claim involves a North Carolina accident involving a North Carolina insured driving a vehicle leased in North Carolina by Verizon. Thus, the Policy is "on properties, lives, or interests" in North Carolina. N.C. Gen. Stat. § 58-3-1; *Collins & Aikman Corp. v. Hartford Accident & Indem. Co.*, 335 N.C. 91, 436 S.E.2d 243, 245 (N.C. 1993); *see also Cont'l Cas. Co. v. Physicians Weight Loss Ctrs. Of Am., Inc.*, 61 Fed. Appx. 841 (4th Cir. 2003).

In their cross motions for summary judgment each side asks that the Court interpret the Policy as a matter of law to either provide or exclude UIM coverage. "An insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *C. D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.*, 326 N.C. 133, 142, 388 S.E.2d 557 (1990). Where the relevant facts are not disputed, construing the policy is an issue of law. *See Parker v. State Cap. Life Ins. Co.*, 259 N.C. 115, 117, 130 S.E.2d 36, 38 (1963); *Trophy Tracks, Inc. v. Mass. Bay Ins. Co.*, 195 N.C. App. 734, 739, 673 S.E.2d 787, 790 (2009). Courts apply general contract interpretation rules when interpreting an insurance policy. *Accardi v. Hartford Underwriters Ins. Co.*, 373 N.C. 292, 295, 838 S.E.2d 454 (2020). For example, as in other contracts, the objective of construction of terms in an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued. *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518 (1970). Also, the various terms of the policy "are to be

8

harmoniously construed, and if possible, every word and every provision is to be given effect." *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506, 246 S.E.2d 773 (1978); *see also Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 9, 692 S.E.2d 605 (2010) ("We construe all clauses of an insurance policy together, if possible, so as to bring them into harmony." (citation and internal quotation marks omitted)). If the policy contains a defined term, "the court applies that meaning unless the context requires otherwise." *Wachovia Bank*, 276 N.C. at 354, 172 S.E.2d 518.

However, there are also specific rules of interpretation for insurance policies under North Carolina law. *See Summit Mgmt. Servs., Inc. v. Falls Lake Fire & Cas. Co.*, No. 521CV00110KDBDSC, 2022 WL 738666, at *3–4 (W.D.N.C. Mar. 11, 2022). Significantly, "wherever possible, the policy will be interpreted in a manner which gives, but never takes away coverage." *Wash. Hous. Auth. v. N.C. Hous. Auths. Risk Retention Pool*, 130 N.C. App. 279, 281, 502 S.E.2d 626 (1998) (citation and internal quotation marks omitted). In construing the coverage afforded by the applicable policy, "provisions of insurance policies and compulsory insurance statutes which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66 (1986), (citing *Moore v. Hartford Fire Ins. Co.*, 270 N.C. 532, 155 S.E.2d 128 (1967)).

To give effect to these principles, "any ambiguity or uncertainty as to the words used in the policy should be construed against the insurance company and in favor of the policyholder or beneficiary." *Id.* One of our sister district courts in North Carolina recently explained, quoting the Supreme Court of North Carolina: "[w]hen an insurance company, in drafting its policy of

9

insurance, uses a 'slippery' word to mark out and designate those who are insured by the policy, it is not the function of the court to sprinkle sand upon the ice by strict construction of the term. All who may, by any reasonable construction of the word, be included within the coverage afforded by the policy should be given its protection. If, in the application of this principle of construction, the limits of coverage slide across the slippery area and the company falls into a coverage somewhat more extensive than it contemplated, the fault lies in its own selection of the words by which it chose to be bound." *Owners Ins. Co. v. MM Shivah LLC, et al.*, No. 5:20-CV-21-D, 2022 WL 668382, at *3 (E.D.N.C. Mar. 4, 2022) (quoting *Grant v. Emmco Ins. Co.*, 295 N.C. 39, 43, 243 S.E.2d 894, 897 (1978)). However, if a court finds that no ambiguity exists, the court must construe the document according to its terms, giving undefined "nontechnical words ... their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." *Woods*, 295 N.C. at 506, 246 S.E.2d 773.

The scope of coverage should also not be interpreted to give no effect to additional risks specifically included in the policy. *See Fulford v. Jenkins*, 195 N.C. App. 402, 407, 672 S.E.2d 759 (2009) (interpreting insurance contract to give effect to additional coverage purchased where interpretation of coverage would violate rules of contract interpretation by giving no effect to the additional coverage); *Pulte Home Corp. v. Am. S. Ins. Co.*, 185 N.C. App. 162, 167–68, 647 S.E.2d 614 (2007) (resisting a "cramped reading" of coverage that would result in coverage in only an extremely narrow set of circumstances and would provide "no genuine insurance" as irreconcilable with North Carolina's "policy of construing ambiguous insurance policies in favor of the insured and in a manner that provides coverage").

10

The insured bears the burden to prove coverage. *See Nationwide Mut. Ins. Co. v. McAbee*, 268 N.C. 326, 328, 150 S.E.2d 496 (1966); *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182, 711 S.E.2d 114, (2011). However, "[i]f the insurer relies on a clause of the policy which excludes coverage, the burden is on the insurer to establish the exclusion." *McAbee*, 268 N.C. at 328, 150 S.E.2d at 497. Moreover, exclusions are not favored, and courts strictly construe exclusions against the insurer within the reasonable interpretation of the policy language. *See Eatman Leasing, Inc. v. Empire Fire & Marine Ins. Co.*, 145 N.C. App. 278, 281, 550 S.E.2d 271 (2001). "When construing the exclusion provision of a [an insurance] policy [the court is] guided by the rule that provisions which exclude liability of insurance companies are not favored and therefore all ambiguous provisions will be construed against the insurer and in favor of the insured." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66 (1986) (citing *Wachovia Bank*, 276 N.C. at 354, 172 S.E.2d 518); *see Owners Ins.*, 2022 WL 668382, at *4.

Also, the Policy must be interpreted in conjunction with the FRA, which the Fourth Circuit has summarized as follows (quoting North Carolina caselaw)[5]:

> The Act's "avowed purpose . . . is to compensate the innocent victims of financially irresponsible motorists." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 573 S.E.2d 118, 120 (N.C. 2002) (cleaned up). "The provisions of this statute are deemed to be a part of every automobile insurance policy written in North Carolina and control over contrary provisions contained in such policies." *Wood v. Nunnery*, 222 N.C. App. 303, 730 S.E.2d 222, 225 (N.C. Ct. App. 2012). Additionally, the Act "is to be liberally construed" because its purpose "is best served when every provision . . . is interpreted to provide the innocent victim with the fullest possible protection." *Pennington*, 573 S.E.2d at 120.

---

[5] The Court is mindful of Defendant's repeated arguments that *Vincent* is an unpublished decision, was wrongly decided and should not be followed. As discussed, *infra*, the Court acknowledges that *Vincent* is "non-binding," but still finds its analysis and holding to be persuasive. And, in any event, the *Vincent* court's discussion of relevant and established North Carolina law concerning the construction of insurance contracts is instructive.

11

*Vincent v AMCO Ins. Co.*, 821 Fed. Appx. 220, 222-223 (4th Cir. 2020).

### B. Plaintiff's Claims for Declaratory Judgment and Breach of Contract

The dispositive issue before the Court is whether, as a matter of law, the Policy is subject to the FRA. If it is, then, as acknowledged by National Union, it must provide UIM coverage and Verizon's declination of UIM coverage is unenforceable. *See* Doc. No. 41 at 9 ("If the FRA applies to the Verizon Policy, Verizon could not reject UIM coverage in North Carolina"); Doc. No. 40 at 15 ("After the 2008 Amendments, a named insured could no longer reject UIM coverage on policies that were subject to the FRA."). While the parties focus their arguments on whether the Court should follow *Vincent*, which the Court finds to be non-binding but persuasive, the Court's decision ultimately turns on the application of two fundamental and long established canons of statutory construction. First, the Court must give full effect to all the language of the governing statute as written by the legislature. *Vincent*, 821 F. App'x 220, 225 (4th Cir. 2020) ("When interpreting a North Carolina statute, we must 'give every word of the statute effect, presuming that the legislature carefully chose each word used'") (quoting N.*C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 675 S.E.2d 641, 649 (2009)).

Second, there is a "general rule of construction that exemptions from remedial statutes are to be construed narrowly." *Olsen v. Lake County, Inc.,* 955 F.3d 203, 206 (4th Cir. 1991); *see also Maready v. City of Winston-Salem,* 342 N.C. 708,730,467 S.E.2d 615, 629 (1996) (narrowly construing exceptions to the open meetings law); *Good Hope Hosp., Inc. v. NC Dep't of Health &Human Servs.,* 175 N.C. App. 309,313,623 S.E.2d 315, 318, *aff'd,* 360 N.C. 641, 636 S.E.2d 564 (2006) (North Carolina courts have established a "rule of statutory construction that exemptions must be construed narrowly"). And, as a corollary, it is well-established that insurance contracts

12

must be interpreted in favor of providing coverage and ambiguities decided against the insurer who drafted the Policy. *See State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66 (1986) (holding as quoted above that insurance policies and compulsory insurance statutes must be construed liberally to provide coverage and any ambiguity or uncertainty as to the words used in the policy should be construed against the insurance company and in favor of the policyholder or beneficiary).

Before discussing the relevant statute, the Court will address *Vincent*, to which the parties have devoted so much of their argument. In *Vincent*, a furniture business, owned by the Vincent family, purchased an insurance policy that covered seven vehicles and included the same "Drive Other Car Coverage – Broadened Coverage for Named Individuals" endorsement at issue in this action. The endorsement identified the married owners by name and indicated that they had $1 million in UIM coverage, for which the company paid a premium. Mr. Vincent was injured in a collision while riding his motorcycle and sought UIM coverage under the endorsement, even though the motorcycle was not one of the scheduled vehicles. The insurance company denied coverage, arguing (as the Insurer does here) that that its policy fell within N.C. Gen. Stat. § 20-279.21(b)(4)'s FRA UIM exemption for policies "applicable solely to fleet vehicles." First the District Court and then the Court of Appeals (unanimously) disagreed with the Insurer, finding that the FRA "mandated that the policy cover Mr. Vincent's injuries, even though the policy's terms don't contemplate coverage."[6] *Vincent*, 821 F. App'x at 221; *Vincent v. Vick*, No. 1:17 CV

---

[6] Even though the Vincents paid for UIM coverage, their insurance policy terms didn't provide coverage because an "owned vehicle" exclusion removed the UIM coverage. In a second part of the *Vincent* opinion that is not relevant here, the court found that the "owned vehicle" exclusion could not be enforced against the Vincents because they were named insureds under the policy.

13

762, 2018 WL 3827636 (M.D.N.C. Aug. 10, 2018). More specifically, the Court of Appeals concluded, "[b]ecause the AMCO policy covers both fleet and nonfleet vehicles, it isn't "applicable *solely* to fleet vehicles," and isn't exempt from the Act … AMCO's contrary interpretation would read the word "solely" out of the fleet exemption." *Id*. at 224.

National Union urges the Court not to follow *Vincent* because it is unpublished, distinguishable and "do[es] not actually make sense."[7] *See* Doc. No. 35 at 22. The Court declines to do so. While unpublished decisions of the Court of Appeals are not "binding" on this Court, district courts should follow decisions of their appellate courts when those decisions are directly on point and persuasive. *See Harris v. S. Charlotte Pre-Owned Auto Warehouse, LLC*, No. 3:14-CV-00307-MOC, 2015 WL 1893839, at *2 (W.D.N.C. Apr. 27, 2015) ("Thus, not only has the issue been litigated, there is case law precisely on point. While *Clark* is not binding on this court because it is unpublished, it is highly persuasive."). In *Vincent*, the Court of Appeals addressed not only the same issue – the application of the FRA's "fleet exemption" – but did so in the context of the exact same policy endorsement.[8] *Vincent*, 821 F. App'x at 223 ("We begin with AMCO's first argument, which requires us to examine the Act and its fleet exemption.") Further, for the reasons discussed below, the Court believes that the analysis and holding of *Vincent* is correct. Therefore,

---

[7] With this ruling, five Federal Judges have now, however, determined that *Vincent* was correctly decided. Nevertheless, National Union will now have an opportunity, should it choose to take it, to directly tell the Fourth Circuit Court of Appeals that *Vincent* – a unanimous opinion authored by its current Chief Judge – was not merely wrongly decided, but "makes no sense."

[8] National Union's attempts to distinguish *Vincent* are unpersuasive. Although the policy in *Vincent* provided UIM coverage, the court squarely addressed the threshold FRA fleet exemption issue without regard to that coverage, which, as noted above, was the subject of the second part of the opinion that is unrelated to the dispute in this case.

14

the Court will follow *Vincent* not because it is compelled to do so, but because it is persuasive authority on the precise issue before the Court.

With all that legal background in mind, now on to the statute. The FRA "is the principal North Carolina statute governing compulsory motor vehicle insurance laws." *Vincent*, 821 F. App'x at 223–24 (quoting *W. Am. Ins. Co. v. Terra Designs, Inc.*, No. 5:11-CV-80, 2014 WL 1309110, at *8 (W.D.N.C. Mar. 31, 2014)). It is a remedial statute (with an "avowed purpose ... is to compensate the innocent victims of financially irresponsible motorists") that requires, among other things, that most types of motor vehicle insurance policies provide their policyholders with UIM coverage. *See* N.C. Gen. Stat. § 20-279.21(b)(4); *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 573 S.E.2d 118, 120 (2002) (cleaned up); *Vincent*, 821 F. App'x at 223. "Every provision" must be "liberally construed" to provide "the fullest possible protection." *Pennington*, 356 N.C. at 573-74.

In 2008, the Act was amended to include, among other things, the following language: "[N]o policy of motor vehicle liability insurance ... *applicable solely to fleet vehicles* shall be required to provide underinsured motorist coverage." N.C. Gen. Stat. Ann. § 20-279.21 (emphasis added). Therefore, "according to the unambiguous language of the statutory provision, a policy 'applicable solely to fleet vehicles' must only insure vehicles that are part of a 'fleet.'" *Vincent v. Vick*, 2018 WL 3827636, at *5 (citing *Hlasnick v. Federated Mut. Ins. Co.,* 353 N.C 240, 244, 539 S.E.2d 274, 276-77 (2000) ("[W]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give it its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and *limitations* not contained therein.")).

15

The Policy here is not "applicable solely to fleet vehicles." Contrary to National Union's arguments otherwise, Doc. No. 41 at 7, ("the only vehicles afforded coverage under [the 'Drive Other Car'] endorsement are Verizon-owned vehicles provided by Verizon to its executives"), the Endorsement in fact is clearly "applicable" to vehicles that are not part of any fleet. *See* Doc. No. 33-6. Indeed, the very name of the Endorsement – "Drive *Other* Car Coverage" signals that it applies beyond the "fleet" vehicles already covered by the Policy. As a specific example,[9] section B.1. of the Endorsement enacts "Changes in Liability Coverage" to make "any 'auto' [that Verizon] *do[esn't] own, hire or borrow*" a "covered 'auto' for Liability Coverage." *Id.* (emphasis added). In other words, the Policy purports to extend coverage to Verizon's executives[10] who are given "company" cars when they are driving any vehicle at all, so long as the vehicle is not owned by Verizon, etc. Thus, by its terms the Policy, through the Endorsement, covered various individuals while they occupied vehicles that didn't belong to them, weren't listed in the policy, and couldn't be considered "fleet vehicles." As such, the policy doesn't apply *solely* to fleet vehicles and the FRA applies to the Policy. *See Vincent*, 821 F. App'x at 225.

Again, *Vincent* is directly on point:

> When interpreting a North Carolina statute, we must "give every word of the statute effect, presuming that the legislature carefully chose each word used." *N.C. Dep't*

---

[9] There are other examples. The Endorsement in section C provides that any individual named in the schedule and his or her "family members" are "insureds" while "occupying" …. *any* "auto" [Verizon] do[esn't] own … ." Doc. No. 33-6 (emphasis added).

[10] National Union argues that it is somehow relevant to analyzing whether the Policy is subject to the FRA that Enck is not a Verizon executive and that he was driving a vehicle that would be considered a "fleet vehicle" at the time of his accident. The Court disagrees. The issue is not how or whether Enck would have UIM coverage under the Policy's current terms, but rather does the Policy – considered without regard to any particular event – apply "solely" to "fleet vehicles." If it does then the FRA doesn't apply, but if the Policy is applicable to more than just fleet vehicles (which the Policy is) then the Policy is subject to the FRA and must include UIM coverage in accordance with the statute.

16

*of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 675 S.E.2d 641, 649 (2009). Had the legislature wanted to exempt *any* policy covering more than four vehicles from the Act's requirements, the exemption would say "applicable to fleet vehicles," not "applicable *solely* to fleet vehicles." And to the extent that there is any ambiguity here, we must construe the Act liberally, in favor of coverage. *See Pennington*, 573 S.E.2d at 120. In sum, the Act's UIM-coverage requirements apply to the [Vincents' insurance] policy.

*Id.* (emphasis in original). Having determined that the FRA applies to the Policy then UIM coverage is required and Verizon's declining of UIM coverage is unenforceable against Enck.

Accordingly, partial summary judgment on liability will be entered in Plaintiff's favor on his first and second claims for relief and in turn denied on Defendant's cross motion for summary judgment on those claims.

### C. Plaintiff's Claims of Unfair Claim Practices and Bad Faith

Plaintiff's third and fourth claims allege that National Union has committed unfair and deceptive trade practices and breached the Policy's covenant of good faith in denying UIM coverage. The North Carolina Unfair and Deceptive Trade Practices Act "makes unlawful unfair or deceptive acts or practices in or affecting commerce that proximately injures a plaintiff." *Duke Energy Carolina, LLC v. NTE Carolinas II, LLC*, 2022 WL 2293908, at *18 (W.D.N.C. June 24, 2022). For Plaintiff to prevail on its UDTPA claim, it must show that "(1) the defendant committed an unfair or deceptive act or practice; (2) the act or practice in question was in or affecting commerce; and (3) the act or practice proximately caused injury to the plaintiff." *Elsayed v. Family Fare LLC*, 2020 WL 4586788 at *14 (M.D.N.C. Aug. 10, 2020). Additionally, "North Carolina courts have repeatedly held that 'a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under [the UTPA,] N.C.G.S. § 75-1.1'" *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (citations omitted). "North

17

Carolina law requires a showing of 'substantial aggravating circumstances' to support a claim under the UTPA.'" *Id.* (citing *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61 418 S.E.2d 694, 700 (1992)).

Here, while the Court readily concludes that Plaintiff is entitled to UIM coverage under the Policy, the record reflects that National Union consistently (albeit erroneously) argued that the Policy was not subject to the FRA so Verizon's decision to decline UIM coverage was enforceable. In response to the denial of coverage, Plaintiff (primarily relying on *Vincent*, which though persuasive is unpublished) disagreed and urged the Insurer to cover his claim. These circumstances do not reflect an unfair trade practice.

Rather, the parties have had an ardent dispute about insurance coverage that has ended up in court. Without more, Plaintiff has failed, as a matter of law, to establish evidence of "aggravating circumstances" sufficient to support a claim for unfair or deceptive trade practices. *See Summit*, 2022 U.S. Dist. LEXIS 43738, at *18 (W.D.N.C. 2022) (no UDTPA violation because "[t]he parties here engage in a contractual dispute about coverage under a written insurance policy, no more and no less."); *Superior Performers v. Meaike*, 2014 U.S. Dist. LEXIS 158862, *23 (M.D.N.C. 2014)("North Carolina courts differentiate between contract and deceptive trade practice claims, and relate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law."). Thus, National Union is entitled to summary judgment on Plaintiff's third claim for relief.

Similarly, National Union is entitled to summary judgment on Enck's claim that the Insurer acted in bad faith and thus breached the Policy's covenant of good faith. The elements of a claim for breach of the covenant of good faith are: (1) refusal to pay benefits under a policy after

18

recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct. *Lovell v. Nationwide Mut. Ins. Co.*, 424 S.E.2d 181, 184 (N.C. App. 1993). Again, apart from "intentionally" and erroneously denying Enck's claim for UIM coverage under the Policy, there is no evidence that National Union "recognized" that Enck had a valid claim, acted in bad faith or engaged in aggravating or outrageous conduct.

To be sure, the Court has found that National Union's analysis of the parties' coverage dispute is wrong (and perhaps stubbornly so in light of its counsel's experience as counsel in *Vincent*); nevertheless, that conclusion, standing alone, is insufficient for Enck to prevail on his claim for breach of the covenant of good faith. *See*, *American Select Ins. Co. v. Natural Blend Vegetables Dehydration, LLC*, 2019 U.S. Dist. LEXIS 47546, *12-13 (E.D.N.C. 2019) (dismissing bad faith claim where insured admitted that liability for coverage was in dispute); *Williams v. Ohio Nat'l Assur. Co.*, 364 F.Supp.3d 605, 613 (W.D.N.C. 2019) (no bad faith where the refusal to pay a claim was "the result of a legitimate, honest disagreement as to policy coverage"). Therefore, the Court will also grant National Union's motion for summary judgment on Enck's fourth claim.

**D.  Defendant's Motion to Strike Amicus Brief Exhibit**

Finally, the Court will briefly address Defendant's Motion to Strike (Doc. No. 42), which will be denied. By this motion, National Union asks the Court to strike Exhibit A to Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment (Doc. No. 39-1), which is a copy of the Brief of North Carolina Advocates for Justice as Amicus Curiae in Support of Plaintiffs-Appellees that had been previously filed in the United States Court of Appeals for the Fourth Circuit in *Vincent*. Simply put, the Court finds no grounds to strike the exhibit, which was already a publicly available document. The amicus brief is not filed as a brief in this action, nor

19

has it been considered as such. Rather, it is offered only as an exhibit for the Court's convenience in the context of Plaintiff's citation of the *Vincent* decision, in which the brief was specifically referenced. Accordingly, the Court declines to strike the exhibit.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's Motion for Partial Summary Judgment (Doc. No. 26) is **GRANTED** as to his claims for Declaratory Judgment and breach of contract (to the extent described above) and **DENIED** as to his claims for unfair trade practices and bad faith**;**

2. Defendant's Motion for Summary Judgment (Doc. No. 32) is **DENIED** as to Plaintiff's claims for Declaratory Judgment and breach of contract (to the extent described above) and **GRANTED** as to Plaintiff's claims for unfair trade practices and bad faith**;**

3. Defendant's Motion to Strike an exhibit to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 42) is **DENIED**; and

4. This case shall proceed towards a final resolution on any remaining questions as to damages in the absence of a stipulation as to the proper amount of Plaintiff's insurance claim or a voluntary resolution of the overall dispute by the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 2, 2023

Kenneth D. Bell
United States District Judge